PROVIDED TO BAKER CI
ON 6/7/17 B CM
FOR MAILING.

United States District Court
Middle District Of Florida
Jacksonville Division

FILED
2017 JUN -9 PM 2:47
CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

Charles McCoy, Father of A.M.,
and A.S., Minor Children,
            Petitioner,

Case No.: 3.17-cv-660-J-34MCR

-v-

Florida Department Of Children and Families,
                        Respondents,

## Petition For Writ Of Certiorari

Comes Now Charles McCoy, the Petitioner pro se, seeking certiorari Review of the termination of his parental rights (TPR) pursuant to Fed. R. Civ. P. Rule 60 (b)(1) and (3) and offers the following in support thereof;

28 U.S.C.§ 2101(c) permits a writ of certiorari to be filed within 90 days of the entry of a judgment.

## Jurisdiction

The Petitioner submits that the Defendants and the Minor Children live, or are employed within the jurisdiction of this court. The Petitioner submits that the violations and events described in this petition occured within the territorial jurisdiction of the court. Therefore this Court has jurisdiction to hear this petition.

1

## Exhaustion Of All Other Remedies

The Petitioner's parental Rights were terminated in Duval County Case No.: 16-2006-DP-000097 on August 25, 2016. See Appendix Exhibit "D". The Petitioner appealed. In Appellate Case No 1D16-4317, the First District Court Of Appeal of Florida, Per Curiam Affirmed the trial court's TPR and Petitioner's motion for Rehearing and a written opinion were denied on April 28, 2017. See Appendix Exhibits "F" and "K" This petition is being filed within 90 days of the final order terminating parental Rights. The Petitioner has exhausted all Remedies available to him under the laws of the State Of Florida.

## Statement Of The Facts And Case

The Petitioner was arrested and convicted of Dealing In Stolen Property in North Carolina in 1994.

Twenty years later, on October 8, 2015 the Petitioner was convicted of Possession Of A Fire-arm By A Convicted Felon; Aggravated Assault (domestic); and Possession Of Cannabis.

The conviction of these charges triggered the Dept. of Children and Families (DCF) filing of a petition to terminate the Petitioner's parental Rights. See Appendix Exhibit "C" pages 9-23

2

The Petitioner has had absolutely "NO" prior domestic battery convictions as alleged by DCF in their petition to TPR.

The minor children's mother, (i.e. Donna Timberland Scott) has previously;

1) had her parental Rights terminated with another child (i.e. Anthony Timberland).

2) abandoned the minor children in the present case, leaving them in the care and custody of the Petitioner for weeks on end.

3) has on numerous occasions made false allegations of domestic battery against the Petitioner, all of which were unfounded and dismissed.

4) has, (as on the date of the Petitioner's arrest), had numerous affairs, with other men, texting nude photos of herself to them in the presense of the Petitioner and the minor children; and

5) has been given numerous case plans which she failed to complete.

The Petitioner has always been gainfully employed; has provided a safe home and support for A.M. and A.S.; and has never previously abused, neglected, or endangered his children, absent, exposing them to his unlawful actions and behavior that resulted in his current incarceration and the termination of his parental Rights.

3

The Petitioner is Remorseful for the acts he committed in the presence of his children and has maintained contact with his children for as long as permitted to do so. See Appendix Exhibit "H" pages 97 - 116

The Petitioner has not voluntarily abandoned his children nor have the children abandoned him.

On June 13, 2016 DCF filed a Petition For Involuntary Termination Of Parental Rights. See Appendix Exhibit "C" pages 9 - 23

On August 25, 2016, the trial court issued a final judgment for termination of parental Rights and permanent commitment and disposition. See Appendix Exhibit "D" pages 24 - 68.

As grounds for terminating the Petitioner's parental Rights, (without being given a meaningful opportunity to complete a case plan with a goal of Reunification), the trial court found that;

1) the Petitioner had abandoned his children and that the children had no desire to have a Relationship with the Petitioner;

2) the length of the Petitioner's incarceration, (3 years), exceeded or constituted a majority of the minor childrens minority as established in Fla. Stat. § 39.806 (1)(d)(1);

4

3) that the Petitioner had sexually abused minor child A.M.;

4) the Petitioner's incarceration was for HVO, murder, or as a sexual predator contrary to Fla. Stat. § 39.806(1)(d)(2) and;

5) a continued parental Relationship with the incarcerated Petitioner would be harmful to the children as established and set forth in Fla. Stat. § 39.806(1)(d)(3);

6) due to the Petitioner's incarceration he is unable to provide for his children and that termination of the Petitioner's parental Rights was the least Restrictived means to insure the minor childrens safety.

See Appendix Exhibit "D" pages 24 - 68

The Petitioner was Represented by court appointed counsel who did little to protect the Petitioner Right to be a "less" than perfect parent.

The Petitioner Requested that the trial courts order terminating his parental Rights be appealed and appellate counsel be appointed.

The trial court then appointed appellate counsel who, on November 6, 2016, petitioned the First DCA seeking leave to withdraw as appellate counsel which was granted. See Appendix Exhibit "E" pages 69 - 70

The Petitioner was then forced to defend his parental rights on his own, with little, to no knowledge, of the law.

The Petitioner argued on appeal that there was "no" clear and convincing evidence presented, by DCF at his TPR hearing, to support the trial court's findings that the termination of his parental rights was the least restrictive means to insure the minor children's safety. See Appendix Exhibit "G" pages 72 - 93

The Petitioner argued that both trial counsel and appellate counsel had been deficient where they allowed DCF to distort the facts without any objection from these court appointed attorneys.

The Petitioner argued that exculpatory was withheld, and inculpatory evidence was misrepresented, resulting in the Petitioner being denied effective assistance counsel and a meaningful opportunity to be heard prior to his parental right being terminated. See Appendix Exhibit "G" pages 73 - 75

The Petitioner requested leave to supplement the record on appeal with exculpatory evidence that would refute the trial court's findings and DCF's allegations. See Appendix Exhibit "H" pages 94 - 129

6

The Respondent filed an objection to the Petitioner's Request to supplement the the Record on appeal. See Appendix Exhibit "I" pages 130-131

In response to the Respondents objection, the Petitioner argued that it was appalling that the Respondents would object to the facts being presented. The Petitioner argued that if the Respondents objection was sustained, it would then be fair to say that his parental Rights were being terminated by fraudulent means. See Appendix Exhibit "I" pages 132-133.

On April 28, 2017, the First DCA denied the Petitioner's motion for a Rehearing, motion for a written opinion, and his motion to supplement the Record; affirming the trial court's order terminating the Petitioner's Right to be a parent to his children. See Appendix Exhibit "F" page 71 and Exhibit "K" page 135

Thus, the timely filing of the Petitioner's Petition For Writ Of Certiorari in this Court.

<u>Standard Of Review</u>

The Petitioner submits that in Reviewing the order terminating his parental Rights there are two very important questions that must be

7

answered. The first, is "was the evidence used to terminate the Petitioners' parental Rights, both clear, and convincing enough to support the trial court's findings"; and second "was termination of the Petitioners' parental Rights the least Restrictive means Necessary to protect the minor children."

The evidence, in the present case, will show that under the circumstances, the most "least Restrictive means to insure the minor children's safety would be to award temporary custody of the children to the maternal grandparents, and offering the Petitioner a meaningful opportunity to complete a case plan with a goal of Reunification, "NOT" placing them up for adoption in in a same sex home contrary to the minor children's upbring and Christian faith.

<u>Argument</u>

The Petitioner submits that his battle in saving and/or protecting his parental Rights and family, is akin to the Biblical story of David and Goliath. DCF has been allowed to present hearsay testimony that is not supported by any clear and convincing evidence. This was done without any objection from his court appointed attorneys.

8

The Petitioner submits that the trial court then erred in finding this hearsay testimony was legally sufficient to meet the "clear" and "convincing" standard necessary to terminate his parental rights, without being given a meaningful opportunity to complete a case plan with a goal of reunification with his children.

The Petitioner submits that he is poor, uneducated in the law, and is incarcerated. DCF's ability to assemble a case against him dwarfs his ability to mount a defense.

The Petitioner submits that both his trial counsel and appellate have been deficient in offsetting this imbalance and the Petitioner has been denied effective assistance of counsel, that has resulted in the termination of his parental rights. See Smith -v- Organization Of Foster Families, 97 S. Ct. 2094 (1977); and Santosky -v- Kramer, 102 S. Ct. 1388 (1982).

As evidence of counsel's deficient preformance, the Petitioner submits exhibits "A-G" in Appendix Exhibit "H" pages 94-129.

The Petitioner submits that the circumstances and events that triggered DCF's petition to terminate his parental rights was an isolated incident and DCF made "NO" "good faith" effort to rehabilate the Petitioner and reunite him with his

9

children through a detailed case plan. See V.M. -v- DCF, 922 So. 2d 1085 (Fla. 4th DCA 2006)

Instead, DCF has erroneously alleged that the Petitioner has voluntarily abandoned his children and made no attempt to maintain a relationship with his children. See Appendix Exhibit "C" pages 9 - 23. DCF further alleged that the children had no desire to have a loving relationship with the Petitioner. The Petitioner submits that nothing could be further from the truth and sought to introduce evidence to the contrary. See Appendix Exhibit "H" pages 98 - 116. This evidence was not presented at the TPR hearing by the Petitioner's court appointed attorney. And when the Petitioner moved to supplement the record with this exculpatory evidence, the Respondents objected and the Appellate Court sustained that objection. See Appendix Exhibit "I" - "K". The Petitioner is shocked and appalled that his parental rights could be terminated based on fraudulent allegations and that DCF, (a state agency), would object to the truth being presented or known. All of this was done without any objections being made by the court appointed attorneys, who were aware of this evidence.

10

The Petitioner submits that, in addition to the 5 letters DFC presented at his TPR hearing, he has received 22 letters from his children, over the course of 18 months, in response to letters that he sent them. This evidence clearly shows that, "contrary" to the allegation made by DCF and the trial court findings", the minor children love their father and wished to maintain a loving relationship with him. Had this evidence been presented at the TPR hearing, there is more than a reasonable probility that the trial court would not have found that the Petitioner had abandoned his children and that the children had no desire to maintain a relationship with their father. See T.H.-V-DCF, 979 So.2d 1075 (Fla.2nd DCA 2008)

The Petitioner submits that DCF alleged, "through hearsay testimony", that there was a history of domestic battery being committed by the Petitioner against the mother (D.S.) and the children. These allegations were "not" and could "not" be supported by any tangible evidence showing prior convictions for domestic battery.

The Petitioner submits that he has absolutely "no" prior convictions for domestic battery and the record is void of any clear and convincing evidence to support a finding that there was a history of domestic violence being committed

11

by the Petitioner, endangering the safety of the minor children. The Petitioner will challenge the Respondents to produce such evidence.

DCF has presented "NO" evidence to show that the Petitioner has ever abused, neglected or abandoned A.M. or A.S. and that continuing a parental relationship with their father would be harmful. Therefore, the trial court erred in finding that the Petitioner has or did abandoned his children, as set forth in Florida Statute § 39.806(i)(d). See T.H.-V-DCF, 979 So. 2d 1075 (Fla. 2nd DCA 2008); and K.C.-V-DCF, 898 So. 2d 1194 (Fla. 2nd DCA 2005).

The Petitioner submits that DCF and the Lesbain foster parents have made unsubstantiated allegations that the Petitioner inappropriately touched A.M. in a sexual manner. This allegation is "NOT" supported by any clear and convincing evidence and the trial court's findings on this allegation was based solely on hearsay testimony with questionable motives. See Appendix Exhibit "H" page 121. The minor child, A.M., denies the allegations as shown in Appendix Exhibit "H" pages 123-124. Again, the Petitioner will challenge the Respondents to produce evidence in support of this allegations and the trial court's findings.

12

The Petitioner submits that Dr. Neidigh's (the State's expert witness) testimony on this matter is unreliable, in that Dr. Neidigh never interviewed or examined either C.A.M. or the Petitioner and his testimony was hearsay at best. The trial court relied heavily on Dr. Neidigh's expert testimony in it's order terminating the Petitioner's parental Rights. See Appendix Exhibit "D" pages 24-68.

The Petitioner submits that there is absolutely "NO" evidence to support the trial court's finding that the Petitioner inappropriately touched his minor child in a sexual minor and that termination of his parental Rights on this ground was error and must be reversed.

## Florida Statute § 39.806(1)(d)

The Petitioner submits that the trial court erred in terminating his parental Rights based on F.S. § 39.806(1)(d), which allows the termination of parental Rights on a finding that a parent's incarceration Represents a substantial portion of the period of time before a minor child attains age 18.

The Petitioner has (8) eight months left on his (3) year sentence. A.M. is 7 years old and A.S. is 4 years old. Certainly it

13

cannot be upheld that the Petitioner's 3 year sentence presents a majority of the minority of his minor children. Let alone the 8 months he has left to serve. See C.C.-V-DCF, 854 So.2d 720 (Fla 2nd DCA 2003); and B.C.-V-DCF, 887 So.2d 1046 (Fla. 2004).

In B.C.-V-DCF, the Florida Supreme Court held that, applying a forward looking construction of § 39.806(1)(d)(1), the 4 yrs. Remaining on the father's sentence was not a substantial portion of the 14 year minority of the child. Id 1054-55

Based on the Florida Supreme Court's findings in B.C. the trial court erred in finding that the Petitioner's current sentence Represents a substantial portion of the minor children's minority.

Therefore, termination of the Petitioner's parental Rights on this ground cannot be upheld and the Petitioner should be given a meaningful opportunity to complete a case plan with a goal of Reunification. See W.W-V-DCF, 811 So.2d 791 (Fla 4th DCA 2002); and J.W-V-DCF, 816 So.2d 1261 (Fla 2nd DCA 2002).

14

## Florida Statute 39.806(1)(d)

The Respondent alleged and the trial court found that the Petitioner has an extensive criminal record and that he is incarcerated for murder, sexual battery, or as an HVO contrary to F.S. § 39.806(1)(b). See Appendix Exhibit "c" pg. 14

The Petitioner submits that he has (2) two felony convictions, that were 21 years apart and NONE were for one of the enumerated offenses set forth in F.S. § 39.806(1)(b).

The Petitioner submits that his (2) two felony convictions, (occurring 21 years apart), does not constitute an extensive criminal history and that termination of his parental Rights on this ground was error and must be Reversed.

Again the Petitioner will challenge the Respondent to produce clearing and convincing evidence contrary to his claim.

## Florida Statute § 39.806(3)

The Petitioner submits that pursuant to F.S. § 39.806(3) DCF may expedite termination without offering the Petitioner a case plan for Reunification. However, in order to do so, DCF must establish that termination is the least

15

Restrictive means and it must be shown that the Petitioner would not benefit from a court case plan.

The Petitioner submits that, in light of the claims made herein, and the evidence presented in the attached Appendix, there has been no evidence presented by the Respondent to show that the Petitioner would not benefit from a court ordered case plan and the trial court erred in concluding that termination of the Petitioner's parental rights was the least restrictive means of protecting the minor children. See In the Interest of D.L.H., 990 So. 2d 1267 (Fla. 2nd DCA 2008) and M.S. -v- DCF, 920 So. 2d 847 (Fla. 4th DCA 2006).

The Petitioner submits that DCF has failed to present any clear and convincing evidence that is sufficient to show that the Petitioner would not benefit from a court ordered case plan. Contrary to DCF's allegations, and the trial court's findings, Dr. Bloomfield testified that the Petitioner would in fact benefit from a case plan with a goal of reuniting with his children. See Appendix Exhibit "H" page 125

The Petitioner submits that since being incarcerated, he has successfully completed a State certified Batters Intervention Program and a Parenting From the Inside Program. See Appendix Exhibit "H" pages 118-119

16

The Petitioner submits that contrary to the trial court's findings, the Record will show that he has maintained a nurturing Relationship, in spite of the adversity he created by his actions towards the children's mother, that Resulted in his current incarceration and the termination of his parental Rights.

The Petitioner submits that the trial court erred in terminating his parental Rights on this ground prior to giving the Petitioner a meaningful opportunity to complete a court ordered case plan with hopes of Reuniting him with his children.

The Petitioner submits that the least Restrictive meaning to insure the safety of his children would be to award temporary custody of the children to the maternal grandparents while the Petitioner completes the Remaining 8 months of his sentence and the successful completion of a court ordered case plan.

## Effective Assistance Of Counsel In Parental Rights Proceedings

The Right to counsel in TPR proceedings includes the Right to effective assistance of counsel and Requires a means of vindicating and defending the parents Rights. See Santosky -V- Kramer 162 S. Ct. 1388 (1982),

It is a basic tenet of America's society and it's laws that individuals have a fundamental, constitutionally protected right to procreate and to be a parent to their children. These rights are recognized by both the Florida Constitution and the United States Constitution. See D.M.T.-V-T.M.H., 129 So.3d 320 (Fla. 2013).

The fundamental liberty interest of a natural parent in the care, custody, and management of their children "does not" evaporate simply because a person has not been a model parent or has lost temporary custody of their child or children to the State.

Accordingly, when the State moves to destroy a weakened family bond, it must provide the parent with fundamentally fair procedures. See Santosky at 753-54.

Under Florida Statutory law, a parent has a right to effective assistance of counsel in all TPR proceedings pursuant to § 39.013(1), (9)(a) Fla. Statutes; and art. I sect. 9 Fla Const.

A parent alleging ineffective assistance of counsel has to identify counsel's errors of commission or of omission and establish that but for counsel's deficient representation the parents rights would not have been terminated. In the present case, the Petitioner submits that once the trial court issued it's final order

18

terminating the Petitioner's parental Rights he contacted the trial judge Regarding his concerns about the performance of his court appointed attorney.

On September 15, 2016 the Petitioner wrote to the court expressing his concerns about his attorney's lack of communication and deficient performance. See Appendix Exhibit "H" page 127

The Petitioner submits that prison records will show that the Petitioner did not Receive a copy of the Final Order Terminating his parental Rights as indicated on the order's Certificate of service. See Appendix Exhibit "D" page 68

"Because the Petitioner was "NOT" properly served a copy of this order, he was unaware that he had only 20 days in which to file a claim of ineffective assistance of counsel (IAC) in the trial court. See Appendix Exhibit "D" page 67-68

The Petitioner submits that he became aware of the time limitations to file an IAC claim, "only" when he was contacted by his court appointed appellate counsel. This was after the 20 day limitation had lapsed.

Appellate Counsel then attempted to provide the Petitioner with a compact disc copy of the trial court's order, but was informed by prison officials that DOC rules prohibited the Petitioner

from Receiving a compact disc.

The Petitioner then filed a motion in the appellate court, (First DCA), Requesting that temporary jurisdiction be given to the trial court to allow him to file his IAC claim. That Request was "denied."

Therefore, the Petitioner was denied his Right to file a claim of IAC. The Petitioner submits that because appellate counsel was aware of this issue she was deficient for failing to Raise this issue on appeal. See Appendix Exhibit "H" page 129. Instead, appellate counsel withdrew from the Petitioner's appeal, leaving him to defend his parental Right alone.

The Petitioner submits that his court appointed attorney was aware of all of the exculpatory evidence the Petitioner later attempted to supplement into the Record and failed to present it during the Petitioner's TPR hearing, constituting IAC.

The Petitioner submits that had it not been but for trial counsel's deficient performance there is more than a Reasonable probability that his parental Rights would not have been terminated and he would have been given a meaningful opportunity to complete a case plan with a goal of Reuniting with his children.

# Closing Argument

The Petitioner submits that Appendix Exhibit "H" pages 97 - 116 clearly shows that the Petitioner did not abandon his children and his children did not abandon him as alleged by DCF, and found by the trial court.

The Trial Court's findings that the Remaining portion of the Petitioner's incarceration constitutes a substantial portion of his minor children's minority, is "not" supported by the facts or Florida Law. See B.C. -v- DCF, 883 So.2d 1046 at 1054-56 (Fla 2004).

The Petitioner submits that he has always loved, cared, and provided for his children and that the record is void of any clear and convincing evidence, "that outside the isolated incident that resulted in his current incarceration", to show that the Petitioner has or may in the future neglect, abandon, abuse or harm his minor children. There is no evidence to support the trial court's findings that the termination of the Petitioner's parental rights and adoption of his children by a lesbain couple is the least restrictive means to insure the safety of the children.

21

In fact, the Petitioner submits that it is mentally and emotionally abusive to subject his Christian raised children to an enviroment that permits same sex Relationships. This is morally unsound and wrong.

The Petitioner submits the trial court erred in "NOT" awarding temporary custody of his minor children to their maternal grandparents, instead of foster parents. The trial court findings permits DCF to use TPR procedures as a means of providing children for adoption to same sex couples without regard of the families Christian beliefs which prohibit such Relationships.

## Relief Being Sought

The Petitioner submits that the "least Restrictive" means to insure the safety of his minor children, and the Relief that he is seeking to protect his protect his fundamental liberty interest of being a parent to his children, would be to award temporary custody of the children to their maternal grandparents, while offering the Petitioner a meaningful opportunity to complete a court ordered case plan with a goal of Reuniting the family. See Padgett -v- Dept. of Health and Rehab. Services, 557 So. 2d 565 at 571 (Fla 1980);

and <u>C. D. -v DCF</u>, 164 So. 3d 40 (Fla. 1st DCA 2015).

## Conclusion

Wherefore, the Petitioner Respectfully moves this Honorable Court to grant the Petitioner's Petition For Writ Of Certiorari by issuing an order directing the trial and the Respondent to give the Petitioner a meaningful opportunity to complete a court ordered case plan with the goal of Reuniting the Petitioner with his children.

## Unnotarized Oath

I Hereby Affirm, under the penalties of perjury, that the statements made herein are true and correct, pursuant to Fla. Statute § 92.525.

Respectfully Submitted,

Charles McCoy

Charles McCoy #756914
Baker Correctional Inst.
20706 U.S. Hwy 90 West
Sanderson, Florida 32087

23

## Certificate Of Service

I Hereby Certify that a true and correct copy of the foregoing has been provided via U.S. Mail this 6th day of June 2017 to;

United States District Court
Middle District Of Florida
300 North Hogan Street
Jacksonville, Florida 32202

Department Of Children And Families
Children's Legal Services
921 North Davis Street Bldg 'B Suite 360
Jacksonville, Florida 32209

Certified By,

_Charles McCoy_
Charles McCoy #J56194
Baker Correctional Inst.
20706 U.S. Hwy 90 West
Sanderson, Florida 32087

24